UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JEWELENE TEMPLETON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-169-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| WAL-MART STORES EAST, LP, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on the Motion for Summary Judgment [R. 90] filed by Defendants Fuqing Yongchao Shoes Leather Goods Co., Ltd. ("Fuqing") and Wal-Mart Stores East, LP ("Wal-Mart"). Plaintiff Jewelene Templeton has filed a Response [R. 106] in opposition to the motion. Defendants have filed a Reply [R. 116] to Plaintiff's Response. For the reasons set forth below, the Court will grant the motion. The Court will also dismiss Templeton's bad faith claims against Defendant Claims Management, Inc.

I.

In her Second Amended Complaint, Templeton claims that on or about August 7, 2007, she purchased a pair of "Sand-N-Sun" brand flip-flop style shoes at a retail store operated by Defendant Wal-Mart in Middlesboro, Kentucky. [R. 54 at ¶¶ 17-18.] She claims that Fuqing manufactured the shoes. [*Id.* at ¶ 17.] Templeton alleges that after wearing the shoes for approximately four to five hours, she developed severe chemical burns on both feet. [*Id.* at ¶ 19.] Accordingly, Templeton alleges that the shoes were defective and unreasonably dangerous

1

at the time of sale. [*Id.* at ¶ 24.] Templeton claims that Wal-Mart and Fuqing are strictly liable for her injuries [*Id*. at ¶¶ 23-29]; she also seeks to hold them liable for breach of the implied warranty of the fitness of the product [*Id*. at ¶¶ 43-51] and for negligence [*Id*. at ¶¶ 61-63].

Templeton's deposition testimony, attached to Defendants' Motion for Summary Judgment, helps to clarify her claims. Templeton testified that she purchased two pairs of Sand-N-Sun flip-flops on or about August 7, 2007. [R. 90, Ex. 1 at 41-43.] One pair was yellow and one pair was blue; Templeton produced a receipt for the yellow pair and testified that the blue pair had the same brand markings. [*Id*.] Templeton wore both pairs during the several days following August 7, 2007, but she testified that she wore the yellow flip-flops more regularly [*Id*. at 42.] Within five to six hours after wearing the flip-flops, Templeton stated that "a redness appeared," [*Id*. at 50] and it was in the shape of the v-shaped strap of the flip-flop. [*Id*. at 135.] Templeton noted that the redness worsened on the second day, but she continued to wear the flip-flops—both pairs—for the next three to four days. [*Id.* at 50-52.] Templeton stopped wearing both pairs after three to four days and shortly thereafter sought medical treatment [*Id*. at 63.]

Initial treatment was sought from two providers: Pineville Community Hospital provided care on August 10, 2007, [R. 90, Ex. 1 at 70] and Tiffany Treece, a nurse practitioner from Log Mountain Family Health Care, treated Templeton around the same time. [R. 90, Ex. 4 at 6.] Subsequent treatment was sought from Dr. Richard Skrip, a foot specialist, Dr. James Chaney, from treaters at the Hematology Center and Oncology Center, [R. 90, Ex. 1 at 68-70] and from Dr. Melissa Knuckles, a medical doctor with expertise in dermatology. [R. 90, Ex. 3 at 8.] Templeton presented to Treece complaining of itchiness on the tops of her feet. [*Id.* at 35; *see also* R. 90, Ex. 1 at 108] Treece prescribed three steroid treatments to Templeton [R. 90, Ex. 4 at

2

31-32] but was unable to issue a definitive diagnosis.[1] [*Id.* at 14, 29-31, 42.] Consequently, Treece referred Templeton to multiple specialists. [*Id.* at 42.]

In less than two months, Templeton's feet were showing signs of healing from the initial redness and itchiness. [R. 90, Ex. 1 at 105-07.] However, Templeton then began to complain of additional ailments—particularly foot pain and staph infections, including on Templeton's stomach, leg, and buttock. [*Id.* at 90-97.] Templeton testified that those were related to her initial injuries, but she was unable to identify any treating physicians who agreed. [*Id.* at 95.] Knuckles', in particular, was unwilling to link the ailments, stating that her examination did not reveal a causal connection between the flip-flops and Templeton's subsequent maladies. [R. 90, Ex. 3 at 14.]

## II.

### A.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the

---

[1] Both contact dermatitis and a chemical burn were considered as possible causes by Treece. [*Id.* at 42.]

plaintiff." *Anderson*, 477 U.S. at 252. In reviewing a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)). The Court has no duty, however, "to search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001) (citation omitted).

**B.**

Defendants Fuqing and Wal-Mart argue that they should be granted summary judgment because Templeton has failed to identify any expert witness who will opine that the flip-flops at issue were defective, and she has further failed to produce any expert report establishing that the flip-flops caused her injuries. Templeton's Response does not address this issue.[2]

---

[2] Templeton's pro se Response to Defendants' Motion for Summary Judgment consisted of a two-page letter and thirty-four attachments. The attachments were pictures of the plaintiff's alleged injuries and copies of medical records.

The Court wants to make special note of the circumstances surrounding Templeton's Response. Templeton, through counsel, filed her complaint on May 30, 2008. [R. 1.] Templeton was represented by that counsel until orders [R. 85 & 86] were entered on October 5 and October 7, 2010, respectively, granting counsel's motion to withdraw as counsel of record. Templeton was afforded fourteen days from October 7, 2010 to obtain new counsel and for counsel to file an appearance.

On October 18, 2010, new counsel filed a notice of appearance. [R. 87.] Templeton was represented by the new counsel until May 19, 2011, when that counsel filed a motion to withdraw as counsel of record. [R. 89.] Defendants' also filed their motion for summary judgment on May 19, 2011. [R. 90.] The motion to withdraw was granted on May 23, [R. 91] and Templeton was again permitted fourteen days to find representation.

The Court received a letter from Templeton on June 9 expressing concern over finding another attorney. [R. 92.] On June 10, the Magistrate Judge scheduled a telephonic conference for June 24 to discuss the situation with both parties. [R. 93.] Before that conference was held, on June 14, another attorney entered an appearance, though only in a limited capacity. [R. 94.] An order was entered on June 14 granting time to Templeton's third attorney to analyze her claim. [R. 96.]

On June 22 an order was entered granting Templeton yet more time—until July 11— to file her response to Defendants' motion. [R. 98.] The Court received a letter on July 8 from

Templeton's claims of strict liability, negligence, and breach of warranty need not be considered separately because they all "have one common denominator:" "causation must be established." *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970); *see also Spencer v. Playtex Products, Inc.*, 2007 WL 2343768, at *2 (Ky. App. Aug. 17, 2007). As stated by Kentucky's highest court in *Holbrook*,

> Whether we view the case as one presenting the problem of negligence in the preparation of the product, negligence in failing to adequately warn about the consequences of the use of the product, or improperly warranting the product to be fit for a particular purpose, or whether the problem is viewed as the sale of a product so defective as to be unreasonably dangerous because of an inherent defect or inadequate warning as to use, in every instance recited, the product must be a legal cause of the harm.

*Id.* In other words, it is the plaintiff's burden to establish the presence of a defect, and to show that this defect was a substantial factor in bringing about her harm. *See id.*; *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 507 (6th Cir. 1998).

The Kentucky Supreme Court has held "that for a proper understanding of that which requires scientific or specialized knowledge and which cannot be determined intelligently from testimony on the basis of ordinary knowledge gained in the ordinary affairs of life, expert

---

Templeton that apprised the Court that Templeton's third attorney was not communicating with her. [R. 100.] Additionally, she asked for more time to complete discovery. [*Id.*] Templeton sent a similar letter on July 21. [R. 103.] On July 27, the Magistrate Judge refused Templeton's request to re-open discovery and permitted her until August 19 to complete her response. [R. 104.] Templeton's response was submitted on August 18 [R. 106] in the form previously noted.

The Court notes that Templeton has been given ample opportunity to present her case over the course of the three years it has been pending. Sixth Circuit precedent holds that "no special treatment [is] to be afforded ordinary civil litigants who proceed pro se." *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988). Templeton has not been given special favor, but her response and attachments were given an in-depth analysis, notwithstanding the lack of cogent argument against Defendants' motion. Throughout the analysis of this claim, the Court has been mindful of the Supreme Court's instruction: "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *McNeil v. United States*, 508 U.S. 106, 113 (1980)

testimony is needed." *Commonwealth, Dept. of Highways v. Robbins*, 421 S.W.2d 820, 824 (Ky. 1967). Further, "expert witnesses are generally necessary, indeed essential, in products liability cases . . . to prove such matters as a product defect and proximate causation . . . ." *Thomas v. Manchester Tank & Equipment Corp.*, 2005 WL 3673118, at *1 (W.D. Ky. May 13, 2005) (quoting William S. Haynes, *Kentucky Jurisprudence: Torts* § 21-18 (1987)); *see also Stevens v. Keller Ladders*, 1 F. App'x 452, 458 (6th Cir. Jan. 12, 2001). In some instances, however, circumstantial evidence may be sufficient on these matters. *See Holbrook*, 458 S.W.2d at 157; *Kentucky Farm Bureau Mut. Ins. Co. v. Hitachi Home Electronics (America), Inc.*, 2009 WL 2760956, at *2 (E.D. Ky. Aug. 26, 2009). "[T]he essence of the test concerning the sufficiency of plaintiff's circumstantial evidence concerning causation is that the proof must be sufficient to tilt the balance from 'possibility' to 'probability.'" *Holbrook*, 458 S.W.2d at 158; *see Gray v. General Motors Corp.*, 133 F. Supp. 2d 530, 534 (E.D. Ky. 2001) (quoting *Beverly Hills Fire Litig.*, 695 F.2d 207, 219 (6th Cir. 1982)). In particular, reliance upon circumstantial evidence is often appropriate where other possible causes have been eliminated. *Kentucky Farm Bureau*, 2009 WL 2760956, at *2; *Gray*, 133 F. Supp. 2d at 534.

Here, Templeton does not have sufficient circumstantial evidence from which a jury could reasonably find that the Sand-N-Sun flip-flops she purchased from the Middlesboro Wal-Mart in 2007 had a defect. Templeton has evidence that she was treated by medical providers in August of 2007 for irritation on the tops of her feet. She stated that this rash began after, and as a result of, wearing the sandals; and, indeed, the rash initially appeared in the pattern the flip-flop straps made on the tops of her feet. Standing alone, however, such evidence does not establish a defect in the flip-flops themselves. This is especially true where, as here, chemical testing on the

---

(citation omitted).

flip-flops did not uncover the presence of any compounds "other than the bulk synthetic rubber components itself which might cause the skin reactions." [R. 90, Ex. 6.] Further, Templeton has no evidence eliminating other possible causes of her skin condition, such as an allergic reaction. *See Kentucky Farm Bureau*, 2009 WL 2760956, at *2; *Gray*, 133 F. Supp. 2d at 534.

      Even assuming that Templeton could establish a defect in the flip-flops, however, her claims must fail because she lacks sufficient evidence to prove that the flip-flops caused her injuries. Under the circumstances as delineated above, expert testimony establishing a connection between the flip-flops and Templeton's injuries is likely necessary. Whether wearing flip-flops for a period of four days could cause a rash or other injuries that last for months is not a matter within the general knowledge of ordinary persons. *See Manchester Tank*, 2005 WL 3673118, at *1.

      Templeton has no expert witness who establishes a connection between the flip-flops and her alleged injuries. Furthermore, testimony from Templeton's medical providers is unable to create any reasonable probability linking her injuries to the flip-flops. Treece testified during her deposition that initially she was uncertain about the cause of Templeton's injuries but upon further reflection agreed that the "more accurate diagnosis is allergic contact dermatitis." [*Id.* at 43-44.] Knuckles', after examining Templeton and reviewing her medical records, was not certain that dermatitis was the cause, [*Id.* at 22] but she did agree that Templeton's contention was improbable. [*Id.* at 21.]

      It should be noted that Templeton attached a letter to her Response written by Dr. Larry Parson, Jr., who appears to practice medicine at Daniel Boone Family Health and Skin Care dated August 17, 2011. [R. 106, Ex. 7.] The letter states that "it is probable that a separate chemical was on the flip-flop that caused the blistering dermatitis noted in the photographs."

[*Id.*]  The letter, in addition to the rest of the record, fails to elaborate about the type of examination Parson conducted or the time period when examination was undertaken. [*Id.*]  The examination apparently included allergy patch testing, and Parson explained that Templeton did not react to the flip-flop material being attached to her skin for varying periods of time. [*Id.*]  In spite of this piece of information, the evidence presented on the issue of causation is insufficient to "tilt the balance from 'possibility' to 'probability.'"  *Holbrook*, 458 S.W.2d at 158.

In short, it appears that Templeton wants the rash itself to serve both as evidence that the flip-flops were defective and that they caused her injuries.  This simply asks the jury to speculate and surmise too much.  *See Gray*, 133 F. Supp. 2d at 534; *Spencer*, 2007 WL 2343768, at *2.  Therefore, the Court will grant summary judgment to Fuqing and Wal-Mart.

In her Second Amended Complaint, Templeton also sued Claims Management, Inc., Wal-Mart's insurer.  [*See* R. 54 at ¶¶ 67-70.]  Specifically, she alleged that Claims Management engaged in unfair claims settlement practices by failing to acknowledge and act with reasonable promptness upon receipt of her claims for injuries against Wal-Mart, by failing to conduct a reasonable investigation into her claims, and by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of her claims.  [*Id.*]  On July 9, 2009, the Court entered an Order bifurcating Templeton's bad faith claims against Claims Management from her underlying tort claims against Wal-Mart.  [R. 38.]  Because the Court finds that Templeton cannot sustain her claims against Wal-Mart, her claims against Claims Management necessarily fail as well.

### III.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Motion for Summary Judgment [R. 90] filed by Defendants Fuqing

8

Yongchao Shoes Leather Goods Co., Ltd. and Wal-Mart Stores East, LP, is **GRANTED**;

    2.    The Plaintiff's claims against Defendant Claims Management, Inc., are **DISMISSED**;

    3.    The Plaintiff's Complaint is **DISMISSED with prejudice**, and this matter is **STRICKEN** from the docket;

    4.    Judgment is entered contemporaneously herewith; and

    5.    This is a final and appealable Order.

This the 30th day of September, 2011.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge